THE STATE OF OHIO, APPELLEE, *v.* DAPICE, APPELLANT.

(No. 13592—Decided January 4, 1989.)

*Philip D. Bogdanoff,* assistant prosecuting attorney, for appellee.

*Lawrence J. Whitney,* for appellant.

GEORGE, J. The defendant-appellant, Joseph Dapice, was convicted of attempted aggravated murder and conspiracy to commit aggravated murder. Each count included a firearm specification, pursuant to R.C. 2941.141. The trial court merged the two offenses for sentencing. R.C. 2923.01(G). Dapice was sentenced on the attempted aggravated murder charge and one firearm specification.

The facts are these: Dapice began dating Rhonda Williams during the summer of 1987. Shortly thereafter, Dapice, Rhonda and her daughter, Jessica, began to receive threats by Rhonda's ex-husband, Jimmy Williams. Dapice had numerous conversations with a former employee and friend, Brownie Greathouse, about the situation. Dapice told Greathouse that he wanted Williams beat up and he gave Greathouse a .22 caliber revolver. Dapice, at one point, told Greathouse that he wanted Williams dead and would pay $2,000.

Greathouse decided to turn this information over to the police. The police planned to have Greathouse and an undercover officer, who would pose as a hit man, set up a meeting with Dapice. On December 10, 1987, the meeting took place at Dapice's business. Dapice paid the undercover officer $200 and gave him Williams's address, a description of his car, and the license number. Dapice told the officer to make the hit look like a drug deal gone sour and that he didn't want Williams to heal. Dapice was arrested the same day. Dapice appeals.

### Assignment of Error I

"Trial court's failure to grant a judgment of acquittal on the gun specification in this cause was contrary to law for reason that the prosecution failed to establish that appellant had on or about his person, or under his control, a device which conforms to the definition as found in O.R.C. 2923.11(A).

"(A) The conviction of appellant for the gun specification herein was contrary to law and against the manifest weight of the evidence.

"(B) There is constitutionally insufficient evidence to sustain appellant's conviction for having a firearm on or about his person or under his control, in that, by sentencing appellant for both having a firearm on or about his possession or under his control while committing aggravated murder and attempted aggravated murder constituted cumulative punishment for allied offenses of similar import."

Dapice contends that the state failed to prove the firearm specification. R.C. 2929.71(A) mandates a term of actual incarceration of three years if both of the following apply:

"(1) The offender is convicted of, or pleads guilty to, any felony other than a violation of section 2923.12 of the Revised Code;

"(2) The offender is also convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony. The three-year term of actual incarceration imposed pursuant to this section shall be served consecutively with, and prior to, the life sentence or the indefinite term of imprisonment."

R.C. 2923.11(B) defines "firearm" as "* * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."

First, Dapice argues that a firearm

specification is inapplicable in a unilateral conspiracy because, when there is an absence of an aider or abettor, constructive possession of the firearm cannot be imputed to him. However, a person is guilty of conspiracy when he has the purpose to commit, promote, or facilitate an aggravated murder even though he plans its commission with another. It is of no consequence that the conspiracy involves another person who feigns agreement and at no time intends to go through with the plan. *State* v. *Marian* (1980), 62 Ohio St. 2d 250, 16 O.O. 3d 284, 405 N.E. 2d 267.

Dapice gave the gun to Greathouse on December 4, 1987. Greathouse testified that, at that time, Dapice wanted James Williams killed. R.C. 2929.71(A) provides for an exception from the imposition of the three-year actual incarceration, but that exception is only for carrying a concealed weapon under R.C. 2923.12. Therefore, R.C. 2929.71 may be applied to any other felony if the offender has a firearm on or about his person or under his control while committing a felony. Under the facts here, Dapice had the firearm under his control during the commission of the conspiracy.

Secondly, Dapice argues that the firearm specification is an allied offense and constitutes cumulative punishment. This court had previously held that the firearm specification is not a separate offense, but is merely a penalty enhancement and R.C. 2941.25 (A) is inapplicable. See *State* v. *Allen* (Apr. 2, 1986), Summit App. No. 12161, unreported.

Lastly, Dapice argues that there is insufficient evidence to support a firearm specification because the state never proved the operability of the gun. In order to convict Dapice of the firearm specification, the state was required to present evidence, either direct or circumstantial, that the firearm was capable of expelling a projectile by the action of an explosion or combustible propellant. *State* v. *Boyce* (1985), 21 Ohio App. 3d 153, 21 OBR 163, 486 N.E. 2d 1246. And R.C. 2929.71(A) requires that the offender be "convicted of" the specification. Accordingly, the state must prove each element of the specification, beyond a reasonable doubt. *State* v. *Broadus* (1984), 14 Ohio App. 3d 443, 14 OBR 563, 472 N.E. 2d 50.

However, the state need not prove by direct evidence that the firearm was operable. In this case the jury had the gun, shells and clip. The trial judge instructed the jury that they were not to load the gun but that they may check the mechanism. It is presumed that the jury followed the trial court's instructions in checking the mechanism and that this evidence was sufficient to convince them that the firearm had the capacity to fire a projectile. *State* v. *Osborne* (Sept. 21, 1988), Summit App. 13588, unreported; *Boyce, supra.* Accordingly, appellant's first assignment of error is overruled.

Assignment of Error II

"Trial court erred in failing to require the state to elect as to which count, count one or count two, it wished to proceed on."

Dapice claims that the state was required to elect, prior to trial, whether to proceed on the count of attempted aggravated murder or on the count of conspiracy to commit aggravated murder. Dapice asserts that Crim. R. 14 requires the trial court to order an election once there is a finding of prejudice by a joinder of the offenses.

A defendant who asserts that a joinder is improper has the burden of making an affirmative showing that his rights are prejudiced. *State* v. *Williams* (1981), 1 Ohio App. 3d 156, 159, 1 OBR 467, 471, 440 N.E. 2d 65,

69. Dapice asserts that there is inherent prejudice by allowing the prosecution a double opportunity to convict him on one set of facts and therefore prejudice occurred before conviction. The test is not one of risk of prejudice; instead, the burden is upon the defendant to either affirmatively demonstrate before trial that his rights would be prejudiced by joinder or to show at the close of the state's case or at the conclusion of all the evidence that his rights actually had been prejudiced. *Williams, supra,* citing *State* v. *Owens* (1975), 51 Ohio App. 2d 132, 5 O.O. 3d 290, 366 N.E. 2d 1367. Although Dapice asserts prejudice, his argument, at best, raises only a risk of prejudice.

Additionally, Dapice asserts that the statutes themselves require that the state elect.

R.C. 2923.01, conspiracy, provides in part:

"(G)  When a person is convicted of committing or attempting to commit a specific offense or of complicity in the commission of or attempt to commit the specific offense, he shall not be convicted of conspiracy involving the same offense."

R.C. 2923.02, attempt, provides in part:

"(C)  No person who is convicted of committing a specific offense, of complicity in the commission of such offense, or of conspiracy to commit such offense, shall be convicted of an attempt to commit the same offense in violation of this section."

A "judgment of conviction" is defined as including both a plea or verdict of guilty and the imposition of sentence. *State* v. *Henderson* (1979), 58 Ohio St. 2d 171, 12 O.O. 3d 177, 389 N.E. 2d 494. Looking at these two statutes, R.C. 2923.01(G) and 2923.02(C), the legislature has made it clear that when a person is found guilty of both conspiracy and attempt, the trial court may sentence on either offense — the conspiracy or the attempt — but it may not sentence on both offenses. Dapice was sentenced on the attempted aggravated murder count and not on the conspiracy to commit aggravated murder. Accordingly, the statutes were not violated and Dapice's second assignment of error is overruled.

### Assignment of Error III

"The trial ocurt erred in failing to dismiss count two of the indictment, conspiracy to commit aggravated murder, for reason that the indictment herein did not allege an overt act."

Dapice contends that the trial court should have dismissed the indictment because the indictment did not allege a specific overt act. R.C. 2923.01(B) states in pertinent part:

"No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged * * *."

The indictment in the case refers to "a substantial overt act in furtherance of a conspiracy having been done by Joseph Dapice."

Crim. R. 7(B) provides in pertinent part:

"The indictment * * * shall contain a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the applicable section of the statute as long as the words of that statute charge an offense, or in any words sufficient to give the accused notice of all the elements of the offense with which he is charged. * * *"

The trial court held that it was not necessary to allege the specific overt act in the indictment. However, the defendant was entitled to know what

the state was alleging as the substantial overt acts. The trial court then granted Dapice's motion for the state to provide a bill of particulars setting forth what alleged substantial overt acts were committed in the furtherance of the conspiracy.

The indictment sets forth all the essential elements of the crime as defined by R.C. 2923.01. Dapice requested a bill of particulars which was granted by the trial court. Accordingly, Dapice had sufficient notice of all of the elements of the crime for which he was charged. Assignment of error three is overruled.

### Assignment of Error IV

"Trial court erred in failing to dismiss count one of the indictment, attempted aggravated murder, for reason that count one fails to charge an offense under Ohio Law."

Dapice contends that there is no crime in Ohio of attempted aggravated murder and, therefore, the trial court erred in not dismissing the charge. R.C. 2903.01(A), in defining "aggravated murder," states:

"No person shall purposely, and with prior calculation and design, cause the death of another."

R.C. 2923.02 defines "attempt" as:

"(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

Dapice argues that the attempt statute clearly limits the charge of attempt to those crimes where purpose or knowledge is sufficient culpability for the commission of the offense. He further argues that since the crime of aggravated murder includes the culpable mental state not only of "purpose," but also "prior calculation

and design," there cannot be an attempted aggravated murder.

R.C. 2901.22 provides a listing of the several culpable mental states used to describe guilty states of mind. It includes purposely, knowingly, recklessly and negligently. "Prior calculation and design" is not listed and presents an anomaly in the criminal code. The trial court found that "prior calculation and design" is not a culpable mental state, because of its absence from R.C. 2901.22. The state argues that "prior calculation and design" is an element of the offense just as "cause the death" is an element.

This assignment of error presents the question of whether "prior calculation and design" is an added degree of culpability necessary to the commission of an aggravated murder, or whether it is but another element of that offense. The phrase lacks any statutory definition and the case authorities are silent on its classification as either an element of aggravated murder or a culpable mental state of that offense.

First, it must be noted that the aggravated murder statute does specify a culpable mental state — purposely. The statute is unique, however, because it is the only statute within the criminal code that uses the phrase "prior calculation and design." It is logical to reason that the phrase presents but an additional element, necessary to raise the offense from one of murder to that of aggravated murder.

This court, therefore, holds that the phrase "prior calculation and design" as used in the aggravated murder statute is an element to be proved along with the other elements listed in the statute. Thus, appellant's assignment of error number four is overruled.

## Assignment of Error VII

"The trial court's failure to grant a judgment of acquittal on count one — the attempted aggravated murder — was contrary to law in that the prosecutor offered insufficient evidence to sustain a conviction."

Dapice contends that the trial court erred in not granting an acquittal at the end of the state's case as there was insufficient evidence to sustain a conviction of attempted aggravated murder. Pursuant to Crim. R. 29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184.

A "criminal attempt" occurs when one purposely does or omits to do anything which is an act or omission constituting a substantial step in the course of conduct planned to culminate in the commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus. The intent to commit a crime does not itself constitute an attempt, nor does mere preparation. *Id.* This standard properly directs attention to the overt acts of the defendant. *Id.*

Dapice's overt acts were giving the gun to Greathouse, setting up a meeting with the hit man, and paying the $200. All of these acts were acts in furtherance of the conspiracy and thus were acts of preparation or planning. In order to commit an attempt, the conduct would have to include some action toward the consummation of the intended crime, after the preparations had been made. See, *e.g.*, *State* v. *Kid-*

*der* (1987), 32 Ohio St. 3d 279, 513 N.E. 2d 311; *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 22 O.O. 3d 259, 428 N.E. 2d 410; *State* v. *Wallace* (Nov. 23, 1988), Summit App. No. 13572, unreported. See, also, Annotation (1973), 54 A.L.R. 3d 612; 40 American Jurisprudence 2d (1962) 830, Homicide, Section 566. An attempt, thus, requires an act sufficiently proximate to the crime intended. Here, there is insufficient evidence to sustain a conviction of attempted aggravated murder and the trial court should have granted an acquittal on that charge. Accordingly, appellant's seventh assignment of error is well-taken.

## Assignments of Error

"V. Trial court erred in failing to grant appellant's motion for a judgment of acquittal on counts one and two.

"VIII. The trial court's failure to grant a judgment of acquittal on count two — the conspiracy count — was contrary to law in that the prosecution offered insufficient evidence to sustain a conviction."

Dapice contends that the trial court erred in not granting an acquittal at the end of the state's case. In Assignment of Error V, Dapice reiterates his arguments discussed in Assignments of Error III and IV. For the reasons stated in the discussion of those assignments of error, the argument in reference to the indictment on the conspiracy to commit aggravated murder is overruled. Additionally, the disposition in Assignment of Error VII on the charge of attempted aggravated murder renders moot the remainder of Assignment of Error V.

Dapice contends that there was insufficient evidence to sustain a conviction of conspiracy to commit aggravated murder and, therefore, judgment of acquittal should have been granted. If reasonable minds can reach

different conclusions based on the evidence as to whether each material element of a crime has been proven beyond a reasonable doubt, the trial court shall not order an entry of acquittal. *Bridgeman, supra.*

Specifically, Dapice contends that one cannot conspire with another who has no intention of going through with the plan. A person is guilty of conspiracy when he has the purpose to commit, promote, or facilitate an aggravated murder and when he plans the commission with another, even though the other person feigns agreement and at no time intends to go through with the plan. *Marian, supra.*

Greathouse testified that Dapice asked him to find someone to kill James Williams and he picked up the gun from Dapice. Greathouse notified the police who set up an undercover officer to pose as the hit man. Greathouse called Dapice and told him he found someone to do the job and a meeting was arranged.

Rodney A. Carter, a special agent with the Bureau of Alcohol, Tobacco and Firearms, United States Treasury Department, testified he met with Greathouse and Dapice to set up the hit on James Williams. Dapice gave Carter $200 and said he would get the rest when the job was done. In view of the evidence presented, this court finds that the trial court did not err when it denied Dapice's motion for a directed verdict. Accordingly, appellant's Assignment of Error VIII is overruled.

### Assignment of Error VI

"The trial court erred in granting the state's motion in limine, regarding a psychologist's testimony prohibiting that psychologist from testifying that, as a result of his esamination [*sic*] and test, it was his opinion that appellant's personality rendered him susceptible to the influence of others in the context of an entrapment defense."

Dapice contends that the trial court erred in granting the state's motion *in limine,* prohibiting Dapice's introduction of psychological testimony as to his susceptibility to an influence or suggestion relevant to the issue of Dapice's predisposition to commit the offense.

Entrapment is an affirmative defense under R.C. 2901.05(C)(2). *State* v. *Doran* (1983), 5 Ohio St. 3d 187, 5 OBR 404, 449 N.E. 2d 1295. Unlawful entrapment occurs when a law enforcement officer plants in the mind of the defendant the original idea and purpose inducing the defendant to commit a crime which he had not considered and which otherwise he had no intention of committing or would not have committed but for the inducement of the law enforcement officer. A person is not entrapped when a law enforcement officer merely affords an opportunity for the commission of the offense. *Sorrells* v. *United States* (1932), 287 U.S. 435.

In the use of entrapment as an affirmative defense, the defendant admits that he committed the offense, but challenges the origin of the criminal intent. *Sorrells, supra; United States* v. *Russell* (1973), 411 U.S. 423, 429. There is some authority that expert testimony on the issue of predisposition may be admitted. *State* v. *Woods* (1984), 20 Ohio Misc. 2d 1, 20 OBR 72, 484 N.E. 2d 773. However, admission of such testimony is a matter left to the discretion of the trial court. *State* v. *Williams* (1983), 4 Ohio St. 3d 53, 58, 4 OBR 144, 149, 446 N.E. 2d 444, 448.

The record indicates that the police merely afforded Dapice an opportunity to commit the offense. Therefore, the trial court did not abuse its discretion in precluding the psychological testimony on his susceptibility or traits to

show predisposition or non-predisposition. Accordingly, appellant's Assignment of Error VI is not well-taken.

### Assignment of Error IX

"The trial court erred in not permitting appellant to testify regarding his state of mind."

Dapice contends that he was not permitted to testify as to his state of mind. Dapice confided to a friend, Officer Taylor, the troubles he had with Jimmy Williams. The record indicates that Dapice was asked what his state of mind was after Officer Taylor died. The trial court sustained objections to this testimony on the basis that such inquiry was not relevant and the questions posed were too broad.

Evidentiary rulings are within the broad discretion of the trial court and will be the basis for reversal on appeal only upon a showing of an abuse of discretion which amounts to prejudicial error. State v. Long (1978), 53 Ohio St. 2d 91, 98, 7 O.O. 3d 178, 186, 372 N.E. 2d 804, 812. Although the objection was sustained to these questions as to relevancy and broadness, Dapice later testified how he felt after Officer Taylor died. Therefore, the trial court did not abuse its discretion and Dapice has failed to show that he was prejudiced. Accordingly, appellant's ninth assignment of error is overruled.

### Assignments of Error

"X. The trial court erred in failing to instruct the jury according to the requests of appellant.

"XI. The trial court committed prejudicial error in not charging jury as requested by appellant on testimony of accomplice as mandatorily required pursuant to Section 2923.01(H)(2), ORC.

"(A) Appellant was denied a fundamentally fair trial as guaranteed to him under the Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution."

Dapice next urges error in the trial court's refusal to charge the jury with regard to duress, an accomplice's testimony, that an attempt to engage in a conspiracy is not a crime and that abandonment is an affirmative defense. The trial court's charge to the jury must be governed by the evidence presented. State v. Loudermill (1965), 2 Ohio St. 2d 79, 31 O.O. 2d 466, 208 N.E. 2d 156.

Dapice's requested instruction, that an attempt to engage in conspiracy is not a crime under the law of Ohio, is a correct statement of the law. However, the record in this case does not support the giving of such an instruction. Therefore, the trial court properly declined to give the instruction. R.C. 2945.11.

Dapice next contends he should have received a jury instruction on abandonment including its status as an affirmative defense. Abandonment can be used defensively, where prior to the commission of or attempt to commit any offense, the defendant divorces himself from the plan, either by telling all the conspirators of his abandonment or by informing law enforcement officers of the plan and his part in it. R.C. 2923.01(I)(2). Dapice did neither of the above. Therefore, the request for an instruction on abandonment was properly denied on the conspiracy charge.

Dapice claims that the failure of the trial court to charge on duress was also error. Dapice testified that Greathouse scared him during a phone call on Wednesday evening, stating that if he did not go along with the plan, Dapice would be killed by the hit man. Dapice met with Greathouse and the hit man the following day. In order for duress to be a defense, the force which is claimed to have compelled criminal conduct against the will of the

actor must be immediate and continuous during all the time the act is being committed. *State* v. *Good* (1960), 110 Ohio App. 415, 11 O.O. 2d 459, 165 N.E. 2d 28. The evidence does not support a jury instruction on duress.

Lastly, Dapice contends that the trial court erred when it failed to charge the jury regarding the credibility of an accomplice's testimony. R.C. 2923.01(H)(2). The record does not support the appellant's conclusion that there was an accomplice. Thus, the trial court did not err in refusing to so instruct the jury. Accordingly, appellant's Assignments of Error X and XI are overruled.

### Assignment of Error XII

"The verdicts of guilty in this case were against the manifest weight of evidence and contrary to law."

Dapice contends that the verdict of guilty is against the manifest weight of the evidence. This court's disposition of Assignment of Error VII requires consideration of this assignment of error only as it relates to the conviction of conspiracy to commit aggravated murder.

In considering the claim that the conviction is against the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving the conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717.

The element at issue in this case is whether Dapice committed a substantial overt act in furtherance of the conspiracy. An overt act is "an open act, done outwardly, without attempt at concealment, and manifesting a specific intent or design." *State* v. *Papp* (1980), 68 Ohio App. 2d 21, 23, 22 O.O. 3d 13, 15, 426 N.E. 2d 518, 520. R.C. 2923.01(B) defines "substantial overt act" as an act which "is of such character as to manifest a purpose on the part of the actor that the object of the conspiracy should be completed."

A reasonable person could find that Dapice committed a substantial overt act in furtherance of the conspiracy. Dapice gave Greathouse a gun and the recorded conversation with the undercover officer, posing as the hit man, established that Dapice gave him $200, the Williams address and the description and license number of Williams's car.

Accordingly, the conviction of Dapice of conspiracy to commit aggravated murder was not against the manifest weight of the evidence and the jury's verdict of guilty is affirmed.

In view of this court's disposition of Assignment of Error VII, the sentence imposed on attempted aggravated murder is vacated and this matter is remanded to the trial court for sentencing on the conviction of conspiracy to commit aggravated murder.

*Judgment accordingly.*

CACIOPPO, J., concurs.

BAIRD, J., dissents in part and concurs in part.

BAIRD, J., dissenting in part and concurring in part. A person who accomplishes murder through the use of a hired killer can be guilty of murder. I see no reason why a person who attempts to do that cannot be guilty of attempted murder. Here the defendant completed the hiring, but the person he hired did not complete the act. But for the person who was hired not following through on what he was hired to do,

the murder would have been completed.

The act or acts constituting the completion of the hiring are, in my opinion, sufficient to constitute attempted murder. Accordingly, I would affirm the judgment in its entirety.